Perry Roshan-Zamir, CSB 161656
Law Offices of Perry Roshan-Zamir
2530 Wilshire Blvd., Third Floor
Santa Monica, California 90403
perry@perry.law

Telephone:  (310) 582-1993
Attorney for  Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ABSOLUTE USA, INC., a California corporation; MOHAMMAD RAZIPOUR, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>HARMAN PROFESSIONAL, INC., a Delaware corporation; MICHAEL A. SCHOEN, an individual and DOES 1 THROUGH 50 INCLUSIVE,<br>Defendants | Case No.  2:21-CV-06410-MCS-MAA<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Hearing Date:    November 15, 2021<br>Hearing Time:    9:00 a.m.<br><br>Crtrm:    7C<br>Address:  First Street Courthouse<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

///

///

///

///

1
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This case arises as a result of DEFENDANT HARMAN PROFESSIONAL, INC. ("HARMAN") and DEFENDANT MICHAEL A. SCHOEN's ("SCHOEN") ("DEFENDANTS" or "Defendants") fraudulent, unfair and discriminative business practices. DEFENDANTS have engaged in a pattern and practice of discrimination and fraudulent conduct against ABSOLUTE and RAZIPOUR.

On or about May 28, 2015, Plaintiff ABSOLUTE and defendant HARMAN entered into a written dealership agreement ("AGREEMENT") related to the sales, rental and servicing of HARMAN products.  ABSOLUTE has been a dealer for Defendants' HARMAN's products since 2015 and continuing.  The AGREEMENT extended for successive one year terms until it was unlawfully terminated by HARMAN.

Such agreement effectively created a franchise relationship between Plaintiffs and Defendant HARMAN, as Plaintiffs paid a franchise fee to HARMAN and were restricted in the use and advertising of HARMAN products and the HARMAN trademark.

On or about March 10, 2020, HARMAN and SCHOEN terminated ABSOLUTE's dealership relationship, and the AGREEMENT without any notice or an opportunity to cure.  HARMAN and SCHOEN also terminated the franchise relationship in violation of California Franchise Investment Law.

HARMAN'S representative MICHAEL A. SCHOEN orally terminated the AGREEMENT, and the franchise relationship, and told ABSOLUTE and RAZIPOUR that he was happy to finally be able to terminate the AGREEMENT. MICHAEL A. SCHOEN further stated that he had wanted to terminate the AGREEMENT for some time because "all of you fuckin Iranians need to be terminated."

The AGREEMENT requires HARMAN to make reasonable efforts to honor an order of products and timely deliver the same to ABSOLUTE *in California*. Further, implicit in the AGREEMENT is that Defendants will act in good faith to honor and comply with the AGREEMENT. Additionally, and most importantly, Defendants

termination of the AGREEMENT terminated the franchise relationship in violation of California Franchise Investment Law.

Defendant HARMAN, cutoff ABSOLUTE's right to purchase products, refused to accept returns and failed to honor the terms of the AGREEMENT, thereby terminating the franchise relationship.

It is important to note that only PLAINTIFF ABSOLUTE and DEFENDANT HARMAN are parties to the AGREEMENT. Individual PLAINTIFF RAZIPOUR and individual DEFENDANT SCHOEN are not parties to the AGREEMENT. Defendants' attempt, at the end of their Motion to Dismiss, to ask the court to dismiss Plaintiff RAZIPOUR, are unfounded, and simply a waste of the courts' time. This is Defendants' *second* Motion to Dismiss in this case. Plaintiffs' First Amended Complaint addressed their initial Motion to Dismiss, and most of their second Motion to Dismiss, as will be discussed hereinbelow. The Plaintiffs respectfully request that the court deny Defendants Motion to Dismiss in its entirety, or in the alternative, give Plaintiffs leave to amend.

## II.     LEGAL STANDARD FOR MOTION TO DISMISS

When deciding a motion to dismiss, courts are directed to accept all factual allegations in the complaint as true and to draw any reasonable inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). Ultimately, the Court may not dismiss a complaint in which the plaintiff has alleged "sufficient factual matter…to 'state a claim that is plausible on its face.'" *Ascroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Such factual plausibility exists when the facts pled "raise[s] a reasonable expectation that discovery will reveal evidence" of wrongdoing and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011). Accordingly, the Ninth Circuit holds that the allegations only need to "give fair notice" of a plaintiff's legal and factual claims "to enable the opposing party to defend itself effectively" in a

way "that is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.2d 1202, 1216 (9th Cir. 2011).

## III.   ARGUMENT

### A. Plaintiffs Have Adaquately Pled a Cause of Action for Violation of CA Corp. Code Section 31000 Et Seq.

i. <u>Plaintiffs' First Cause of Action is Not Time Barred Because There Was a Material Modification of the Agreement in 2012, Thereby Renewing the Statute of Limitations Period.</u>

It is understandable that counsel for Defendants do not understand the California Franchise Investment Law ("CFIL") and the California Franchise Relationship Act ("CFRA"), and therefore, as a result, Defendants have failed to make any valid arguments against the properly pled first cause of action in the Plaintiffs' First Amended Complaint ("FAC").

The Defendants have filed a Motion to Dismiss as to the first cause of action for violation of California Corporations Code Section 31000 on the basis that Plaintiff's claim is time barred pursuant to Corporations Code §§31101.  Although Defendants are correct to state that Section 31300 is the statute of limitations provision for section 31300, Defendants have ignored the fact that a material modification of the agreement occurred in 2020 when they terminated the Agreement, thereby restarting the statute of limitations period.

California Corporations Code Section 31018 provides:

(a) "Sale" or "sell" includes every contract or agreement or sale of, a contract to self, or disposition of, a franchise or interest in a franchise for value;
(b) "Offer" or "offer to sell" includes every attempt to dispose of, or solicitation of an offer to buy, a franchise or interest in a franchise for value;
(c) The terms defined in this section do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee; provided, that a material modification of an existing franchise, whether upon renewal or otherwise, is a "sale within the meaning of this section.

The definition of sale and offer in Corporations Code Section 31018 does not include the renewal or extension of an existing franchise where there is no interruption in the operation of a franchise business.  However, ***where a material modification of an existing franchise is made***, there is a "sale" within the meaning of the section. Therefore, because there was a material modification of the interim agreement, i.e. HARMAN's termination of the Agreement in March 2020, and the material modification was within the statute of limitations, the Plaintiffs' (Franchisees') claims are not time barred.

Additionally, Defendants incorrectly argue that Plaintiffs "fail to allege how the alleged violation of the CFIL – offering and selling a franchise without registering the offer of franchise as required by Section 31101 of the CFIL – caused them any harm." Defendants Motion to Dismiss ("MTD") 7:20-22. A cursory reading of the First Amended Complaint ("FAC") will resolve this. *See* FAC and FAC ¶¶29-31.

For these reasons alone, the Defendants' Motion to Dismiss fails and the court should deny their Motion. However, in order to show the court that Plaintiffs have properly plead its first cause of action, we need to examine the California Franchise Investment Law and the California Franchise Relationship Act.

<div style="margin-left: 2em;">

ii.  <u>An Introduction to California Franchise Investment Law and the California Franchise Relationship Act – Plaintiffs Have Properly Pled Its First and Second Causes of Action.</u>

</div>

Under the California Franchise Investment Law and the California Franchise Relations Act, a franchise is a contract or agreement, either express or implied, whether oral or written, by which (1) a franchisee is granted the right to engage in a marketing system substantially prescribed by the franchisor; (2) the business is substantially associated with the franchisor's trademark or other commercial symbol; and (3) the franchisee is required to pay a franchise fee. Corp. Code, § 31005, subd. (a); Bus. & Prof. Code, § 20001, subds. (a), (b) & (c).  See Commissioner of Corporations Release 3-F: "When Does an Agreement Constitute a Franchise?", attached hereto as Exhibit "A".

While the responsibility for statutory interpretation ultimately rests with the court, the Guidelines, as interpretation of a statute by the officials charged with its administration, are entitled to great weight. (*People v. Kline* (1980) 110 Cal. App. 3d 587, 593; *City and County of San Francisco v. State of California* (1978) 87 Cal. App. 3d 959, 965; see also Bus. & Prof. Code, § 20009.) In any event, the "franchise business operating within this state" language is more properly read as defining the type of agreement the provision is intended to cover. In other words, the provision applies to all franchise agreements that concern the operation of a franchise business within California.

The CFRA provision is not limited. Rather, it applies to "*any claim* arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5 (*Frango Grille USA, Inc. v. Pepe's Franchising Ltd.* (C.D.Cal. July 21, 2014, No. CV 14-2086 DSF (PLAx)) 2014 U.S. Dist. LEXIS 182207.)

**The Case at Hand**

This case arises from a written dealer agreement, which, taken into consideration with surrounding evidence, dictates that a franchise existed between the Plaintiffs and HARMAN. HARMAN is a multi-billion dollar world renowned company in the electronics arena, and they have been for decades. HARMAN is party to thousands, if not more, similar Dealer Agreements with other companies. HARMAN has established and enforced an elaborate and detailed marketing system centered around the HARMAN trademarks, and the Dealer Agreements authorize companies to advertise HARMAN products using the HARMAN trademarks. Throughout all applicable time periods, HARMAN has controlled and dictated the terms upon which companies may market HARMAN products and use the HARMAN trademarks, through a marketing system prescribed and enforced by HARMAN. In addition to various restrictive marketing schemes, each of the HARMAN franchisees were required to pay a fee to HARMAN to use the HARMAN trademarks.

HARMAN are the owners of several HARMAN trademarks that are substantially associated with the HARMAN franchise business including, but not limited to, the following federally registered trademarks for the names and logos of "HARMAN": US Trademark Registration Numbers 4818559, 4635668, 6058914, 5453986, 5448869, 4927936, and 4528145, to name a few.

From May 2015 through March 2020, Plaintiffs were subject to a stringent marketing system – a strict set of requirements – proscribed and enforced by Defendant HARMAN, including the requirement that Plaintiffs comply with the use of HARMAN logos in a certain manner, in a certain forum, and on a certain platform.

Plaintiff ABSOLUTE has paid hundreds for the use of the HARMAN trademarks in advertising. That is, until HARMAN unlawfully terminated the rights of the Plaintiffs in March 2020.

## THE CFRA

The CFRA prohibits a franchisor from terminating a franchise without good cause and imposes procedures and penalties for such prohibited acts.   Through their agreements and actions, HARMAN has deprived Plaintiffs of their rights under their franchisee-franchisor relationship, thereby terminating their franchise, without first complying with the requirements of the California Franchise Investment Law and the California Franchise Relations Act.

The CFRA serves to protect California franchisees, typically small business owners and entrepreneurs, from abuses by franchisors in connection with the nonrenewal and termination of franchises. Courts are required to construe the CFRA broadly to carry out legislative intent; that intent is to protect franchise investors, i.e. those who pay for the right to enter into a business. *Thueson v. U-Haul International, Inc.,* 144 Cal.App.4th 664 at p. 673.  In fact, Bus. & Prof. Code, §20010 specifically provides that "Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void." Therefore, Defendants cannot, by contract, waive compliance with the provisions of the Franchise Relations Act and seek damages for breach of lease.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

Defendants seek to *oversimplify* the relationship between the parties and dismiss the existence of the franchise, without providing any evidence in their support.  The facts are clear that Plaintiff ABSOLUTE were granted, by written agreement, the right to use certain "HARMAN" trademarks and did in fact use them in connection with their business for almost five(5) years.

> *It is important to note* that this franchise relationship was not created by a single agreement, but is rather the result of the parties' actual practices, oral as well as written promises, and the course of dealings.  The evidence shows that the arrangement here fits squarely within the applicable statutory definition of a franchise.  Defendants cannot avoid a franchise relationship simply by disclaiming its existence. What the Defendants choose to call relationship is immaterial to the analysis, and is immaterial in a Motion to Dismiss.

Due to Defendants' lack of knowledge in California Franchise Law, specifically the CFIL and CFRA, they were unable to properly argue that Plaintiffs' First Amended Complaint failed to properly please its first cause of action for violation of CA Corp. Code Section 31000 et seq. Therefore, the Defendants Motion to dismiss must be denied.

**B. Plaintiffs Have Adaquately Pled a Cause of Action For Violation of CA Business and Professions Code Section 20000 Et Seq.**

Defendants' arguments against Plaintiffs' second cause of action are simply based on its lack of knowledge of California Franchise Law. As stated above, a Franchise Agreement doesn't have to be in writing to be considered a Franchise Agreement. Additionally, many contracts that specifically state that "this shall not constitute a franchise agreement" are, in fact, franchise agreements, and would be treated as such in California. Alongside that fact, fees do not have to be called "franchise fees" in an agreement to be considered franchise fees.

The Defendants entire Motion to Dismiss is attempting to argue facts, which is improper in a motion to dismiss. When deciding a motion to dismiss, courts are directed to accept all factual allegations in the complaint as true and to draw any

8

reasonable inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). Whether this was, in fact, a franchise or not, and whether or not franchise fees were paid is a matter of fact, not of law, to be determined in the discovery and litigation process, not during a motion to dismiss.

For these reasons, Defendants arguments fail and their Motion to Dismiss must be denied.

### C. Defendants have Misconstrued the Fraud Allegations.

[I]n alleging fraud or mistake,' Rule 9(b) requires a party to 'state with particularity the circumstances constituting fraud or mistake,' including 'the who, what, when where and how of the misconduct charged.'" *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). "In addition, '[t]he plaintiff must set forth what is flase or misleading about a statement, and why it is false.'" *Id*. (quoting *Vess*, 317 D.3d at 1106); *see also Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)). However, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Defendants' Misreading of Plaintiffs' Fraud allegations is evident through their assertion that the fraud claim lacks the requisite particularity. Defendants note that the First Amended Complaint fails to specifically identify who made the fraudulent representations, under what authority, and when such fraudulent representations were made. *See* MTD, pg. 10:1-8.

Plaintiff has sufficiently alleged the "who" – Defendant HARMAN – the "what" – that ABSOLUTE had the right to purchase products from HARMAN and sell such products online – the "when" – from May 28, 2015 through March 10, 2020 – the "where" – in California where HARMAN shipped product to Plaintiff ABSOLUTE, and the U.S and worldwide, where HARMON shipped ABSOLUTE's orders to customers – and the "how" – HARMAN perpetrated this fraud and misrepresentation by allowing the orders to go fulfilled and shipping the products to ABSOLUTE'S customers.

Defendants' fraudulent misrepresentations include:

> "HARMAN expressly granted ABSOLUTE the right to use the Harman trademarks associated with their franchised business in the AGREEMENT." First Amended Complaint ("FAC") ¶19.

> "HARMAN misrepresented to ABSOLUTE that it had the right to purchase products from HARMAN. Specifically, HARMAN knew that ABSOLUTE was selling certain HARMAN products under different trade names on various online retailers. For many years HARMAN perpetrated this fraud and misrepresentation by allowing the orders to go fulfilled and shipping the products to ABSOLUTE'S customers." FAC ¶39.

Plaintiffs have clearly pled the Fraud cause of action with sufficient particularity, and therefore, Defendants motion to dismiss as to fraud must be denied.

**D. Plaintiff Properly Pled Negligent Misrepresentation.**

In the same way that Plaintiffs' cause of action for fraud properly alleges with particularity the circumstances constituting fraud or mistake, "including 'the who, what, when where and how of the misconduct charged," Plaintiffs cause of action for Negligent Misrepresentation is properly alleged as well. *See Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

E. **Plaintiff Properly Pled Breach of Contract.**

A plaintiff pleading a claim for relief for breach of contract under California law must show: (1) a legally enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of that contract)...; and (4) damage to the plaintiff caused by the defendant's breach. *Hickcox-Hoffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017).

At this stage in litigation, Plaintiffs have adequately pled claims for Breach of Contract. <u>AGREEMENT</u>: Plaintiff ABSOLUTE has alleged that "[t]he parties entered into the AGREEMENT on or about May 28, 2015." FAC ¶70. <u>Plaintiff performed per the AGREEMENT.</u>: Plaintiff has alleged that "ABSOLUTE has performed all conditions and obligations on its part to be performed, except any that may have been

excused by HARMAN'S failure to perform and/or otherwise made impossible by HARMAN." FAC ¶71. <u>Harman breached the AGREEMENT</u>: "HARMAN breached the AGREEMENT by terminating the AGREEMENT without proper notice or an opportunity to cure as required under the AGREEMENT. HARMAN also refused to honor the warranties on existing products and failed to fulfil all orders placed." FAC ¶73; and *see* FAC ¶75. <u>Harm to Plaintiff due to HARMAN's breach</u>: "As a direct and proximate result of HARMAN'S wrongful termination of the AGREEMENT ABSOLUTE has sustained damages including, but not limited to, loss of business …" FAC ¶76

Accordingly, Plaintiff has properly pled a cause of action for breach of contract and Defendants' Motion to Dismiss as to this cause of action must be denied.

### F.  Plaintiff Properly Pled Breach of Implied-In-Fact Contract.

"Like an express contract claim, the elements of an implied-in-fact- contract claim are [1] a valid implied-in-fact contract, [2] the plaintiff's performance or excuse for nonperformance, [3] the defendant's breach of the agreement, and [4] the resulting damages to plaintiff. *Iconlab Inc. v. Valeant Pharm. Int'l Inc.,* No. 816CV01321JLSKES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017), *aff'd sub nom. Iconlab, Inc. v. Bausch Health Companies, Inc.*, 828 F. App'x 363 (9th Cir. 2020) (applying California law). Thus, "[a] claim for breach of implied covenant of good faith and fair dealing requires the same elements [as a breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Santana v. BSI Fin. Servs. Inc.*, No. 20CV1577-GPC(WVG), 2020 WL 6150473, at *11 (S.D. Cal. Oct. 2020) (Curiel, J.) (quoting *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015)). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Careau & Co. v.*

*Sec. Pac. Bus Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990), *as modified on denial of reh'g* (Oct. 31, 2001).

Here, Plaintiff properly plead a cause of action for breach of conduct where Plaintiffs allege both the contractual relationship as well as conduct by HARMAN that breach the implied covenant. Plaintiff states the contractual relationship in paragraph 78, and further states that "Because HARMAN fulfilled and or shipped the products sold on the online retailers, HARMAN knew or had reason to know the conduct of ABSOLUTE. HARMAN never raised an issue with ABSOLUTE'S conduct." FAC ¶79. Therefore, Plaintiff has properly plead this cause of action, and Defendants' Motion to Dismiss must be denied.

G. **Plaintiff Properly Pled Breach of Implied Covenant of Good Faith and Fair Dealing.**

"[A] claim for breach of implied covenant of good faith and fair dealing requires the same elements [as a breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Santana v. BSI Fin. Servs. Inc.*, No. 20CV1577-GPC(WVG), 2020 WL 6150473, at *11 (S.D. Cal. Oct. 2020) (Curiel, J.) (quoting *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015)).

Here, as touched upon above with implied-in-fact contract, Plaintiffs have properly plead a cause of action for Breach of Implied Covenant of Good Faith and Fair Dealing. Specifically, after Plaintiff alleges the existence of the contractual relationship between ADBSOLUTE and HARMAN, Plaintiff alleges in paragraph 85 of the First Amended Complaint that "DEFENDANT HARMAN unfairly interred with PLAINTIFF ABSOLUTE'S right to receive the benefits of the contracts when it unfairly terminated them on March 10, 2020." As there is both a contractual relationship alleged, as well as "benefit conferred by the contract," This cause of action is properly pled and Defendant's Motion to Dismiss must be denied.

///

**H. Plaintiff Properly Pled Unjust Enrichment.**

To note, Defendants site to *New York law* to support their motion to dismiss this cause of action *in California.*

The Ninth Circuit has held that Courts may construe allegations of unjust enrichment as a quasi-contract claim seeking restitution where the plaintiff alleges that defendant "has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Loop AI Labs Inc. v. Gaitti*, 2015 WL 5158639 at *6 (N.D. Cal. Sept. 2, 2015) (when a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution and that such a claim should not be dismissed as duplicative or superfluous).

In their claim for Unjust Enrichment, Plaintiffs allege that as a result of Defendants' misrepresentations, "HARMAN has been unjustly enriched at the expense of ABSOLUTE," and that "HARMAN has derived and continues to derive a benefit from failing to perform its contractual obligations pursuant to the AGREEMENT…" FAC ¶ 88. Therefore, Plaintiffs have stated a valid quasi-contract Unjust Enrichment claim, and Defendants' Motion to Dismiss as to Unjust Enrichment must be denied.

**I.  Plaintiff Properly Pled Unfair Business Practices.**

The Unfair Competition Law ("UCL") established separate causes of action for unlawful, unfair, or fraudulent business practices. *See* Cal. Bus. & Prof. Code §17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). The scope of the UCL "is sweeping, embracing anything that can properly be called a business practice." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir. 2006) (citation omitted). The court must evaluate Plaintiff's UCL claim under the unfairness prongs of the statute. *See* Rubio v. Capital One Back, 613 F.3d 1195, 1293 (9th Cir. 2010). Plaintiff's allegations more than adequately state a plausible UCL claim under the unfairness prong.

In *Cel-Tech*, the California Supreme Court held that an unfair business practice is "conduct that threatens an incipient violation of an antitrust law, or violates the

policy or spirit of one of those laws because its effects are comparable to or the same violation of the law, or otherwise significantly threatens or harms competition." *Id*, 20 Cal.4th at 186-87. "Any finding of unfairness to competitors must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186. A cursory reading of the First Amended Complaint shows that Plaintiffs have met this standard when they allege that "HARMAN falsely represented and allowed ABSOLUTE to sell HARMAN'S products under different trade names on various online retailers…" until HARMAN abruptly terminated the AGREEMENT without notice." FAC ¶92. The Unfair Business Practices cause of action is properly pled and Defendant's Motion to Dismiss must be denied.

> **J. Absolute's CEO and Plaintiff Mohammad Razipour Cannot Be Dismissed as Plaintiff When the First Amended Complaint Alleges Race Discrimination an Unruh Civil Rights Act.**

Defendants, without the support of any law whatsoever, ask this Court to dismiss Plaintiff Mohammad Razipour as a party to this matter. The First Amended Complaint has properly pled standing and facts to support RAZIPOUR as a Plaintiff in this matter, and the Defendants' Motion to dismiss must be denied, especially when Defendants failed to state any law *at all* to support their request.

**IV.    TO THE EXTENT THAT THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTION IN WHOLE OR IN PART, PLAINTIFFS' SEEK LEAVE TO AMEND THE COMPLAINT**

Neither the filing nor granting of a motion to dismiss before an answer terminate[s] the right to amend; an order of dismissal denying leave to amend at that stage is improper, and leave to amend must be granted. *Breier v. N. Cal. Bowling Proprietors' Ass'n*, (9th Cir. 1963) 316 F.2d 787, 789. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Form v. Davis* (1962) 371 U.S. 178, 182.

Accordingly, if this Court is inclined to grant Defendants' motion in whole or in part, or finds that any of the amended complaint is factually insufficient, Plaintiffs respectfully request that this Court allow leave to amend the complaint.

## V.   CONCLUSION

For the reasons outlined in detail hereinabove, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety. Alternatively, should the Court not deny the motion outright, Plaintiffs respectfully request leave to amend its complaint.

Dated:  October 27, 2021

LAW OFFICES OF
PERRY ROSHAN-ZAMIR

By: _____

Perry Roshan-Zamir
Attorney for  PLAINTIFFS

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS